Shirley HARVELL; Rev. Emmanuel Lofton; Hattie Middlebrook; Mary Alice Jones; and Jacquelin Henton, Plaintiffs,

v.

Dr. Frank LADD, Individually and in his Official Capacity as Superintendent of the Blytheville, Arkansas School District No. 5; The Blytheville, Arkansas School District No. 5, A Public Body Corporate; The Board of Directors of the Blytheville, Arkansas School District No. 5; and the Individual Board Members, William "Bill" Thominson; Norvell Moore; William "Bill" Sullivan; Harold Sudberry; Helen Nunn; Karen Frazier; Steve Littrell; and William "Bill" Stovell, Jr., Individually and in their Official Capacities as School Board Members of the Blytheville, Arkansas School District No. 5, Defendants.

No. J–C–89–225.

United States District Court, E.D. Arkansas, Jonesboro Division.

March 19, 1991.

John W. Walker, P.A., Wiley A. Branton, Jr., Little Rock, Ark., for plaintiffs.

Robert V. Light, Friday, Eldredge & Clark, Little Rock, Ark., for defendants.

## MEMORANDUM AND ORDER

REASONER, District Judge.

Plaintiffs brought this action pursuant to § 2 of the Voting Rights Act, 42 U.S.C. § 1973, as amended. Plaintiffs contend that the current at-large election scheme for electing school board directors in the Blytheville, Arkansas School District No. 5 violates the Act by effectively denying the black minority voters in the district an equal opportunity to participate in the political process and to elect representatives of their choice. No constitutional violation is alleged by plaintiffs. Plaintiffs seek declaratory relief and an injunction requiring the Blytheville School District to implement a single member district election scheme with a residency requirement. Defendants deny that there is any violation of the Act and further contend that plaintiffs' complaint should be dismissed on the ground of laches due to plaintiffs' failure to bring this action before the 1980 census data became "stale." This case was tried to the Court on November 8 & 9, 1990. The Court now makes the following findings of fact and conclusions of law:

### I. *Findings of Fact*

1. Plaintiffs are black citizens and electors of the Blytheville, Arkansas School District No. 5 (hereinafter "School District").

2. Plaintiff Shirley Harvell has been an unsuccessful candidate for the Board of Directors of the Blytheville School District (hereinafter "School Board") on two occasions, one in September of 1989 and again in 1990.

3. Defendants are the School District, its superintendent, and the individual members of its School Board.

4. The School District encompasses the City of Blytheville, and adjacent rural areas outside the city limits in Mississippi County, Arkansas.

5. The School Board is composed of eight members elected to designated positions for four (4) year terms in annual elections on an at-large basis. Two positions are subject to election each year.

6. Prior to 1987, a candidate was elected to the School Board if the candidate received a plurality of the votes. As a result of Ark.Code Ann. § 6-14-121, School Board members must now be elected by a majority vote.

7. The 1980 federal census data reflects that the black voting age population for the School District is 28.9%. The black population as a whole in the district is approximately 34%.

8. At the time of the trial of this matter, the 1990 federal census data for the School District was unavailable.

9. The black population in the School District is geographically compact and located on the south side of the City of Blytheville.

10. The black population in the School District is a politically cohesive group.

11. One black candidate was elected to the School Board in 1974, and another was elected in 1975. There have continuously

been two black members on the eight member School Board from the 1975 annual election to the present time.

12. The School Board members have historically worked together harmoniously.

13. The election results involving black candidates for the Blytheville School Board from 1969 to 1990 are as follows:

| | | | |
|---|---|---|---|
| 1969 | Dr. James C. Guard (W) | 1014 | |
| | Mrs. Carrie B. White (B) | 769 | |
| 1970 | O.W. Weaver (B) | 1074 | |
| | Mason F. Day, Jr. (W) | 2212 | |
| 1973 | W.J. Tomlinson (W) | 1068 | |
| | Rev. T.J. Green (B) | 907 | |
| 1974 | Edwin L. Holstead (W) | 415 | |
| | Ayre E. "Pop" Lester (B) | 1232 | |
| | Dan M. Burge (W) | 885 | |
| 1975 | George "Preacher" Nichols (W) | 182 | |
| | Richard "Dick" Reid (W) | 582 | |
| | Bill D. Jackson (W) | 331 | |
| | Norvell Moore (B) | 1068 | |
| | Mrs. Allen Bush (W) | 812 | |
| 1978 | Ayre E. "Pop" Lester (B) | (unopposed) | |
| 1979 | Norvell Moore (B) | (unopposed) | |
| 1982 | Ayre E. "Pop" Lester (B) | 948 | |
| | Jerry Nall (W) | 1107 | |
| | Dr. Helen Nunn (B) | 1187 | |
| | Harold Edwards (W) | 901 | |
| 1983 | Norvell Moore (B) | (unopposed) | |
| 1986 | Dr. Helen Nunn (B) | (unopposed) | |
| 1987 | Edwin L. Holstead (W) | 606 | |
| | Norvell Moore (B) | 629 | |
| 1988 | Bill Sullivan (W) | 758 | |
| | Curtis "Preacher" Smith (B) | 166 | |
| 1989 | Harold Sudbury, Jr. (W) | 1302 | |
| | Thurman J. Green II (B) | 287 | |
| | Steve Littrell (W) | 1299 | (one year term) |
| | Shirley M. Harvell (B) | 305 | |
| | Lawrence B. Haley (B) | 374 | |
| | Stewart R. Jerome (W) | 1226 | |
| 1990 | Steve Littrell (W) | 810 | |
| | Shirley M. Harvell (B) | 135 | |

Plaintiff's Exhibit # 13.

---

14. The black members of the School Board historically have been, and currently are, the overwhelming choice of the black voters in the School District.

15. Although plaintiffs Harvell, Middlebrook, and Jones hold the view that the current black School Board members, Dr. Helen Nunn and Dr. Norvell Moore, are not responsive to concerns of black constituents, the current black members of the School Board are the representatives of choice of the overwhelming majority of the black community.

16. The testimony of Mr. James Lynch at trial, based on analyzing past elections and voting patterns, established that voting

in the School District is racially polarized in that usually the majority of black voters vote for black candidates and the majority of white voters vote for white candidates.

17. However, white voters do not vote in such a manner in the School District to deny black voters representation on the School Board approximately proportional to the black voting population, as evidenced by the fact that candidates who were the overwhelming choice of the black population have been elected to the School Board.

18. The proof in the record is insufficient to establish that plaintiff Harvell's unsuccessful candidacy for the School Board was the result of racial voting patterns.

## II. *Conclusions of Law*

Section 2 of the Voting Rights Act (hereinafter "the Act") provides:

(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, as provided in subsection (b) of this section.

(b) A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: *Provided,* that nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

42 U.S.C. § 1973.

In *Thornburg v. Gingles,* 478 U.S. 30, 50–51, 106 S.Ct. 2752, 2766, 92 L.Ed.2d 25 (1976) (footnotes and citations omitted), the United States Supreme Court set forth the following three-part test for analyzing claims under § 2 of the Act: The Court stated:

First, the minority group must be able to demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single member district. If it is not, as would be the case in a substantially integrated district, the *multimember form* of the district cannot be responsible for minority voters' inability to elect its candidates. Second, the minority group must be able to show that it is politically cohesive. If the minority group is not politically cohesive, it cannot be said that the selection of a multimember electoral structure thwarts distinctive minority group interests. Third, the minority must be able to demonstrate the white majority votes sufficiently as a bloc to enable it—in the absence of special circumstances, such as the minority candidate running unopposed—usually to defeat the minority's preferred candidate. In establishing this last circumstance, the minority group demonstrates that submergence in a white multimember district impedes its ability to elect its chosen representatives.

A violation of § 2 can be proved by showing discriminatory effect. Proof of discriminatory intent is not required to establish a claim under the Act. *Id.* at 35, 106 S.Ct. at 2758.

Factors which the Court in *Gingles* considered to be relevant to the determination of a § 2 violation include: the history of voting-related discrimination; the extent to which voting is racially polarized; the extent to which the State or political subdivision has used voting practices or procedures tending to enhance the opportunity for discrimination;[1] the exclusion of the

---

1. Such practices or procedures include unusually large election districts, majority vote require-

minority from candidate slating processes; the effects of past discrimination in employment, health care, and education; the use of racial appeals, whether overt or subtle, in campaigns; the extent to which minorities have been elected to office; the responsiveness of elected officials to minority needs; and the policy underlying the use of the contested practice or structure. *Id.* at 44–45, 106 S.Ct. at 2763.

The Supreme Court in *Gingles* upheld the North Carolina district court's findings of violations of § 2 of the Act in all of the challenged House of Representative and Senate districts in North Carolina except House District No. 23. *Id.* at 80, 106 S.Ct. at 2781. House District No. 23 was a three person multimember district in which one black had been elected each term, since 1973, to one of three seats in the district. *See Gingles v. Edminsten,* 590 F.Supp. 345, 349 & 366 (E.D.N.C.1984). Some of the black victories in House District No. 23 were the result of unopposed elections. *Id.* at 370. A majority of the Supreme Court in *Gingles* found that blacks in House District No. 23 did not have less of an opportunity to elect representatives of their choice. *Gingles,* 478 U.S. at 80, 106 S.Ct. at 2781.

The Court finds the situation with the Blytheville School Board to be factually similar to the situation in House District No. 23 in *Gingles,* rather than any Arkansas House of Representatives or Senate Districts at issue in *Jeffers v. Clinton,* 730 F.Supp. 196 (E.D.Ark.1989), cited by plaintiffs.[2] As in House District No. 23, there has been sustained electoral success by black candidates in the School District through unopposed races and through contested races. The majority of the Supreme Court in *Gingles* pointed to the sustained electoral success by black candidates in House District No. 23 as a factor inconsistent with a finding of a § 2 violation. *Gingles,* 478 U.S. at 77 & 102, 106 S.Ct. at 2780 & 2793. Due to the overriding factor of sustained electoral success by black candidates in the Blytheville School District, the Court finds that black voters in the School District do not have less opportunity to elect representatives of their choice. Accordingly, the Court holds that there is no violation of § 2 of the Act.[3]

In view of the fact that black voters have elected black members to the School Board approximately proportionate to their percentage of voting age population,[4] and in view of the fact that Blytheville enjoys a multi-racial school board that works harmoniously together, the Court finds that it would be detrimental to the welfare of the students of the School District to balkanize the district for the mere purpose of increasing black membership on the board by one member. This would create an unfortunate situation where, not only would board members be responsive to only a certain geographic area, but perhaps worse, white board members would be responsive only to white interests and black board members only to black interests.

In holding that there is not a violation of § 2 of the Voting Rights Act in this case, the Court does not foreclose the possibility

ments, and prohibitions against "bullet voting". *See Thornburg,* 478 U.S. at 45, 106 S.Ct. at 2763.

**2.** The Court also finds this case to be distinguishable from the Humnoke School District case cited by plaintiffs. In *Sherpell v. Humnoke School District No. 5 of Lonoke County, Arkansas,* 619 F.Supp. 670, 679 (E.D.Ark.1985), the Honorable George Howard, Jr. found that the at-large election system for school board members was "unconstitutionally maintained for the discriminatory purpose and with the intent of limiting the opportunity of blacks to participate effectively in the political process, and in the election of board members of their choice as well as to prevent black candidates from being elected to the board." However, no black had ever been elected to the Humnoke School Board

and numerous other factors indicated discrimination in the school district.

**3.** Plaintiffs point out that litigation with regard to the Mississippi County Quorum Court and the City Council of Blytheville has lead to the creation of single member districts in the election of members for both of those bodies. However, as the Court understands it, the lawsuits regarding the quorum court and city council were settled by agreement of the parties. There was no adjudication by the Court of liability under the Voting Rights Act.

**4.** Voting age population percentages are the relevant numbers in voting rights cases. *See Jeffers v. Clinton,* 730 F.Supp. 196, 199 (E.D.Ark. 1989).

that at some time in the future the white majority in the School District could consistently vote in such a way as to deny black voters the ability to elect representatives of their choice. However, at this time, the evidence does not support that conclusion.

Despite the Court's holding that there is no § 2 violation, the Court does not find that plaintiffs have brought forth a frivolous lawsuit. Therefore, defendant's motion for sanctions shall be, and hereby is, denied.

It is, therefore, ORDERED that plaintiffs' claim for declaratory and injunction relief is denied, as the Court finds that there is no violation of section 2 of the Voting Rights Act in this case.[5] Judgment will be entered in favor of defendants, and plaintiffs' complaint shall be dismissed.

It is SO ORDERED.

---

**5.** Because the Court finds that there is no violation of § 2 of the Act, there is no need to reach

the issue of whether laches should apply in this case.