The Honorable Tommy Baker State Representative Post Office Box 361 Osceola, Arkansas 72315
Dear Representative Baker:
I am writing in response to your request for my opinion on two questions that I will paraphrase as follows:
 1. In light of the fact that Harvell v. Blytheville School District, 33 F.3d 910 (1994), has been resolved, does the Blytheville School District Board still qualify for exemption status pursuant to A.C.A. 6-13-631(g)(2)?
 2. Can the Blytheville School District Board continue to consist of eight (8) members in violation of provisions of A.C.A. 6-13-634?
You report that the Blytheville School Board has been composed of eight members since 1987, whereas, subject to certain specified exemptions, A.C.A. § 6-13-634 mandates that the school district board comprise either five or seven members.
RESPONSE
With respect to your first question, A.C.A. § 6-13-631g(2) indeed removes the exemption from the statutory requirement regarding the number of school board members for districts that have resolved litigation. However, various other statutory exemptions exist that may continue to apply. Among these are provisions exempting any district operating under a federal court order enforcing *Page 2 
the Voting Rights Act and districts having a zoned board of directors in compliance with the Voting Rights Act. A.C.A. § 6-13-631(g)(1)(A) and (C). The question of whether these exemptions apply to validate the numerical composition of the Blytheville School District is one of fact to be determined by a court. With respect to your second question, I cannot accept your premise that the membership of the Blytheville School District Board necessarily violates the provisions of A.C.A. § 6-13-634, which sets the limits on board membership at five or seven or, in the case of districts having an average daily attendance of 24,000 or more, at nine. As noted, A.C.A. § 6-13-631 contains various exemptions crafted to acknowledge the preemptive effect of the federal Voting Rights Act, which requires that minorities be afforded access to proportional representation. The question of whether current demographics require that the district board consist of eight members is one to be resolved by the judiciary as opposed to this executive office. I can only note that the federal courts in the past have approved the eight-member composition of the board as complying with the Voting Rights Act. Any change in this composition may well require court approval.
Question 1: In light of the fact that Harvell v.Blytheville School District, 33 F.3d 910 (1994), has beenresolved, does the Blytheville School District Board still qualifyfor exemption status pursuant to A.C.A. 6-13-631(g)(2)?
Section 6-13-631 of the Arkansas Code (Supp. 2009), as amended byAct 959 of 2009, which addresses the effect of minority population on elections, provides in pertinent part:
 (a) Beginning with the 1994 annual school election, the qualified electors of a school district having a ten percent (10%) or greater minority population out of the total population, as reported by the most recent federal decennial census information, shall elect the members of the board of directors as authorized in this section, utilizing selection procedures in compliance with the federal Voting Rights Act of 1965, as amended.
 (b)(1) At least ninety (90) days before the election, the local board of directors shall: *Page 3 
 (A) By resolution, choose to elect members of the board of directors from five (5) or seven (7) single-member zones or from five (5) single-member zones and two (2) at large; and
 (B) With the approval of the controlling county board of election commissioners, divide each school district having a ten percent (10%) or greater minority population into five (5) or seven (7) single-member zones in accordance with the federal Voting Rights Act of 1965, as amended.
 * * * (c) A board of directors choosing to elect members of the board of directors by five (5) single-member zones and two (2) at-large positions may fill the two (2) at-large positions by drawing lots from among the current members of the board of directors.
 * * * (g)(1) The following school districts shall be exempt from the provisions of this section:
 (A) A school district that is currently operating under a federal court order enforcing school desegregation or the federal Voting Rights Act of 1965, as amended;
 (B) A school district that is operating under a preconsolidation agreement that is in compliance with the federal Voting Rights Act of 1965, as amended;
 (C) A school district that has a zoned board of directors meeting the requirements of the federal Voting Rights Act of 1965, as amended; and
 (D) A school district that a federal court has ruled is not in violation of the federal Voting Rights Act of 1965, as amended, so long as the court order is in effect. *Page 4 
 (2) A school district which on August 13, 1993, was in the process of defending a lawsuit brought under the federal Voting Rights Act of 1965, as amended, shall also be exempt from the provisions of this section until such time as the lawsuit has been finally resolved.
 (3)(A) A school district released from operating under a federal court order enforcing school desegregation shall comply with the provisions of this section.
(Emphasis added.)
The statute just recited explicitly provides that a school district board of the sort apparently at issue in your request should consist of five or seven members. As reflected in the statute set forth above, A.C.A. § 6-13-631(g)(2) provides that a school district defending a pending lawsuit brought under the Voting Rights Act as of August 13, 1993 will be exempt from the provisions of the statute, presumably including the restriction as to the allowable number of school-board members, given the fact that the lawsuit has yet to be resolved.
As regards your specific question, I can only opine that the mere fact that the Harvell litigation has been resolved does not mean the federal court's determination that the Blytheville School District should be represented by an eight-member board no longer applies.[1] The upshot of the Harvell
litigation was that the eight-member board, as distinct from the five-or seven-member board anticipated in the state statute, should be maintained in order to comply with the preemptive Voting Rights Act.[2] Until a court considers the current demographics *Page 5 
and rules that compliance with the numerical requirements of the state statute would not offend the Voting Rights Act, theHarvell ruling must be viewed as remaining in effect.
Read in context, A.C.A. § 6-13-631(g)(2) does no more than declare that a school-board membership that varies from that set forth in the state statute may not be changed until a lawsuit based upon the Voting Rights Act has been resolved. The statute does not declare that the numerical membership must be changed once the litigation is resolved. On the contrary, the resolution of the lawsuit may in fact memorialize the court's conclusion as to what composition of the board will comply with preemptive federal law. *Page 6 
Moreover, I will note that A.C.A. § 6-13-631(g) contains various subsections that anticipate that a school district might have a variant number of board members if certain conditions apply, regardless of whether a federal lawsuit has been resolved. Specifically, without even addressing the issue of preemption, A.C.A. § 6-13-631(g)(1) exempts the following from the numerical requirement set forth in the statute:
 (A) A school district that is currently operating under a federal court order enforcing school desegregation or the federal Voting Rights Act of 1965, as amended;
 * * * (C) A school district that has a zoned board of directors meeting the requirements of the federal Voting Rights Act of 1965, as amended; and
 (D) A school district that a federal court has ruled is not in violation of the federal Voting Rights Act of 1965, as amended, so long as the court order is in effect.
As noted above, the mere fact that a court case is no longer subject to appeal does not mean that the ruling in the case does not apply. The fact remains that the court in Harvell approved an eight-member board as consistent with the Voting Rights Act, as opposed to the 5-2 board the school district proposed. Moreover, with respect to subsection (C) of the statute just recited, given the ruling in Harvell, it would appear that the eight-member zoned board indeed complies with the Voting Rights Act. What remains unclear is whether under current circumstances a seven-member board, which would comply with state law, would also comply with the Voting Rights Act. As the court noted in Harvell, the paramount concern under federal law is to avoid racial gerrymandering and to vindicate the right of minority voters to participate in the electoral process. 126 F.3d at 1040. So long as a seven-member board, whether completely elected by zones or not, would comply with this priority, the state law regarding numerical requirements might well be deemed to apply by a reviewing court, although subsection (C) of the statute just recited could be read as suggesting that a zoned board of any number might be permissible so long as it complies with the Voting Rights Act. I can do no more than point out that a federal appellate court has affirmed, more than a *Page 7 
decade ago, that the Blytheville School District's eight-member, zoned board complies with the preemptive Voting Rights Act. Not being acquainted with the current demographics of the school district, I cannot opine whether a different composition of the board might comply with federal law. I can only opine that a ruling has been rendered regarding the composition of the board and that, pending a judicial reconsideration of the issue, that ruling should be observed.
Question 2: Can the Blytheville School District Board continueto consist of eight (8) members in violation of provisionsof A.C.A. 6-13-634?
As stated, your question assumes that the current composition of the board violates the provisions of A.C.A. § 6-13-634, which mandates that a school board consist of five, seven or nine members, depending upon the circumstances. However, as indicated in my response to your previous question, it may be that an eight-member board is required to ensure compliance with the Voting Rights Act, which I have stated is clearly preemptive of any contrary state law. Not being a finder of fact, I cannot opine whether this requirement actually applies under current circumstances. I must limit my conclusion to a simple declaration that a federal court, which is a judicial entity uniquely situated to make this factual determination, has held that a zoned board consisting of eight members, elected pursuant to the boundaries in effect at the time of the court's decision, complied with preemptive federal law. I am neither authorized nor equipped to opine whether a court currently faced with this issue would conclude that the number of members of the board should be reduced pursuant to state law.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General DM/JHD:cyh
[1] The Harvell case, despite your reference to a single ruling, has an expansive history. See Harvell v. Ladd,759 F.Supp. 529 (E.D.Ark. 1999); Harvell v. Ladd,958 F.2d 226 (8th Cir. 1992); Harvell v. BlythevilleSchool District No. 5, 33 F.3d 910 (8th Cir. 1994); cert.denied Blytheville School District No. 5 v. Harvell,517 U.S. 1233 (1966); Harvell v. Blytheville School DistrictNo. 5, 126 F.3d 1038 (8th Cir. 1997). None of these cases directly addresses a potential tension between the number of members on the Blytheville School Board and the numbers mandated under the statute just recited.
[2] The provisions of the Voting Rights Act are clearly preemptive of any conflicting state legislation. As the Supreme Court noted inCrosby v. National Foreign Trade Council,530 U.S. 363, 372-73 (2000):
 A fundamental principle of the Constitution is that Congress has the power to preempt state law. Art. VI, cl. 2; Gibbons v. Ogden, 9 Wheat. 1, 211 (1824); Savage v. Jones, 225 U.S. 501, 533 (1912); California v. ARC America Corp., 490 U.S. 93, 101 (1989). Even without an express provision for preemption, we have found that state law must yield to a congressional Act in at least two circumstances. When Congress intends federal law to "occupy the field," state law in that area is preempted. Id., at 100; cf. United States v. Locke, 529 U.S. 89, 115 (2000) (citing Charleston Western Carolina R. Co. v. Varnville Furniture Co., 237 U.S. 597, 604 (1915)). And even if Congress has not occupied the field, state law is naturally preempted to the extent of any conflict with a federal statute. Hines v. Davidowitz, 312 U.S. 52, 66-67 (1941); ARC America Corp., supra, at 100-101; Locke, supra, at 109. We will find preemption where it is impossible for a private party to comply with both state and federal law, see, e.g., Florida Lime Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143 (1963), and where "under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines, supra, at 67. What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects:
 "For when the question is whether a Federal act overrides a state law, the entire scheme of the statute must of course be considered and that which needs must be implied is of no less force than that which is expressed. If the purpose of the act cannot otherwise be accomplished — if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect — the state law must yield to the regulation of Congress within the sphere of its delegated power."
 Savage, supra, at 533, quoted in Hines, supra, at 67, n. 20.
(Footnote omitted.)
The Voting Rights Act is unambiguous in proscribing any state or political subdivision thereof from imposing any practice or procedure that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color. . . ." 42 U.S.C. § 1973(a). This provision is clearly preemptive of any provision of state law to the contrary.