591 So.2d 238 (1991)
STORER COMMUNICATIONS, INC., a Delaware corporation, SCI 17, Inc., a Delaware Corporation, Storer Cable Tv of Florida, Inc., a Florida corporation, and TCI Storer, Inc., a Delaware corporation, Appellants,
v.
STATE of Florida, DEPARTMENT OF LEGAL AFFAIRS, State Attorney, Seventeenth Judicial Circuit, Pembroke Pines, a municipal corporation of the State of Florida, and City of Hollywood, a municipal corporation of the State of Florida, Appellees.
No. 91-1556.
District Court of Appeal of Florida, Fourth District.
July 31, 1991.
Terry S. Bienstock, James C. Cunningham, Jr. and Philip J. Kantor of Frates Bienstock & Sheehe, Miami, David Marx, Jr., James E. Betke, Carol H. Berman and Paula Krasny of McDermott, Will & Emery, Chicago, for appellants.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Sarah B. Mayer, Asst. Atty. Gen., West Palm Beach, for appellee-State of Florida, Dept. of Legal Affairs.
Steven L. Josias, City Atty., Samuel S. Goren, Deputy City Atty., Yamilie M. Trehy and Scott J. Frank, Asst. City Attys., Fort Lauderdale, for appellee-City of Pembroke Pines.
John J. Copeland, Jr., County Atty., Fort Lauderdale, for amicus curiae-Broward County.

*239 EXPEDITED APPEAL
PER CURIAM.
Appellants seek review of the trial court's order that granted the Florida Department of Legal Affairs' [Department] motion for temporary injunction. We reverse.
The Department filed a complaint which alleged that appellants had violated provisions of chapter 817, the Florida Communications Fraud Act, and section 501.201 et seq., the Florida Deceptive and Unfair Trade Practices Act. The complaint alleged that appellants' method of marketing ENCORE, an all new cable channel, in Pembroke Pines and Hollywood was unlawful because the marketing plan was deceptive and misleading. The Department also moved for a temporary injunction. The motion sought to enjoin appellants from continued marketing of ENCORE and from providing the ENCORE channel. After a hearing, the trial judge granted the motion and issued the temporary injunction. Appellants were enjoined from broadcasting ENCORE to a cable subscriber before the subscriber expressly gave prior approval to receive the new channel. This appeal followed and we granted appellants' motion for emergency relief which we treated as a motion to expedite their appeal.
The parties refer to appellants' method of marketing ENCORE as a negative option plan.[1] The marketing technique involved mailing at least eight different notices to existing cable subscribers about the new channel. The notices were in various forms including bill stuffers, direct mailing, notices on the customers' bills and a detailed letter. These notices informed subscribers that they would receive ENCORE free of charge in June of 1991. After that, from July 1991 until May 1992, they would be billed $1.00 a month for this optional channel. They also advised subscribers that they could cancel ENCORE to avoid this $1.00 monthly charge and how to go about cancelling ENCORE. Subscribers were provided with a postpaid, pre-addressed form and with a toll-free telephone number they could use to cancel ENCORE. They were also informed that they could contact their local customer service representative to cancel ENCORE.
The Department presented three witnesses. Charles Flanagan, the Mayor of Pembroke Pines and one of appellants' customers, testified that he did not understand the one notice that he had read. However, on cross examination he admitted that he had read only a portion of the notice and fully understood the notice once he read the entire notice. He further testified that he found nothing false in the notice, but felt that the rate schedule printed on the notice was "confusing." However, after reading the bold print on the notice he testified that he understood the rate schedule. Also, the Mayor understood that as a cable customer he could cancel ENCORE or the entire cable service if he wanted and as appellants had done in the past they could change their services and raise their prices without advance consent from a customer. He testified that he received about twenty calls about the marketing of ENCORE, out of the fifteen to twenty thousand cable subscribers in Pembroke Pines. The Department concluded its case by calling two expert witnesses. Walter Dartland, a practicing attorney and a consumer advocate, testified that the notice was misleading or confusing or tended to mislead or confuse people, especially, the elderly, uneducated and non-English speaking. Richard A. Hausler, an attorney and professor at law at the University of Miami School of Law, testified that he questioned the legality of the contract the notice created.

BURDEN OF PROOF
Generally, to obtain a temporary injunction with notice a party must establish:
a) irreparable harm;
b) a clear legal right to the relief requested;
c) the lack of an adequate remedy of law; and
d) public interest
*240 However, because section 501.207(1)(b) authorizes the Department to seek injunctive relief, it did not have to establish irreparable harm, lack of an adequate remedy at law or public interest. See, Harvey v. Wittenberg, 384 So.2d 940 (Fla. 3d DCA 1980) and U.S. v. Sene X Eleemosynary Corp., 479 F. Supp. 970 (S.D.Fla. 1979). The Department's sole burden at the temporary injunction hearing was to establish that it had a clear legal right to a temporary injunction. We conclude that the Department failed to meet that burden.[2]
A court should sparingly and cautiously grant temporary injunctions and only in clear cases, reasonably free from doubt. Ordinarily, a temporary injunction should not issue where the legal rights of the parties are in substantial dispute. We hold that the trial court erred when it granted the Department's motion for temporary injunction.

CHAPTER 817
The trial court could not have found that the Department had a clear right to an injunction pursuant to chapter 817. That chapter only applies to goods and merchandise, not cable television services. See Satellite Television v. Continental Cablevision, 714 F.2d 351, 353 (4th Cir.1983) (cable television programming is a service, not goods or merchandise).[3]

SECTION 501.204
Section 501.204 et seq., Florida Statutes, also may not apply to the ENCORE marketing plan. That section does not govern the modification of contracts and appellants' marketing of ENCORE and their decision to add the ENCORE channel to the list of channels may be a modification of the existing contract with their customers. The trial court never addressed that issue.
Nevertheless, section 501.204(2), Florida Statutes, clearly states that in construing what an unfair method of competition is or what constitutes an unfair or deceptive act or practice in the conduct of any trade or commerce, Florida courts should give due consideration and great weight to the Federal Trade Commission's [FTC] interpretations of the equivalent federal law. "Negative option plan" is a term of art used in the FTC regulations, however, no federal rule exists that addresses the ENCORE-type marketing plan. Nor does section 501.204, Florida Statutes, mention negative option plans:
Unlawful acts and practices
(1) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
(2) It is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), as amended and in effect on April 1, 1983.
The FTC regulation that governs negative option marketing plans is 16 C.F.R. 425. According to the FTC record, the proceedings it held before adopting 16 C.F.R. 425 failed to demonstrate that negative option plans are so oppressive to consumers and so lacking in redeeming virtues that they should be banned outright. Statement of Basis and Purpose of rule 425, 38 Fed.Reg. 4907 (1973). Thus, neither state nor federal laws prohibit the use of negative option plans. The trial court's order also recognized that negative option plans are not illegal per se.
Both parties rely on the provisions of 16 C.F.R. 425 to support their arguments. *241 However, that rule was promulgated to regulate a specific type of negative option plan and does not apply to the ENCORE-type marketing plan. The FTC has ruled that 16 C.F.R. 425 is applicable only to "so-called prenotification negative option merchandisers, i.e., those plans which send out a notice of selection prior to shipment and ship and bill the merchandise if the subscriber to the plan does not send back a rejection notice within a prescribed time." Id. at 4908.[4] Thus, the plan contemplated in rule 425 is one in which there is a prior monthly selection notice. The ENCORE marketing plan does not consist of monthly selection notices which if not acted upon result in mailing the merchandise, or, in this case, providing the programing. ENCORE is a one time offer. In other words, the ENCORE plan does not contemplate mailing a list of movies each month which the subscriber must reject each and every month. Thus, appellants' marketing of ENCORE does not qualify as a negative option plan as that term is used in the FTC regulations. Accordingly, we conclude that 16 C.F.R. 425 cannot serve as a basis on which to determine whether the marketing scheme in question constitutes a deceptive and unfair business practice.
Therefore, to obtain the temporary injunction pursuant to section 501.204 the Department had to clearly establish that the ENCORE marketing plan was unfair or deceptive. However, our view of the record reveals that the Department failed to establish that the ENCORE marketing plan was an unfair or deceptive act or practice. We find a lack of competent and substantial evidence to support the trial court's finding that appellants misled or intended to mislead any of its customers. At best, the Department established that the ENCORE plan was confusing.
Accordingly, we reverse the trial court's "Order on Request for Temporary Injunction" and remand without prejudice to the Department to seek permanent injunctive relief pursuant to its complaint.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
ANSTEAD and DELL, JJ., concur.
GARRETT, J., concurs in part, dissents in part with opinion.
GARRETT, Judge, concurring in part; dissenting in part.
I concur that the Department of Legal Affairs [Department] failed to establish a clear legal right to obtain the temporary injunction.
I respectfully dissent as to the remand for the Department to seek permanent injunctive relief pursuant to its complaint. There are no ascertainable standards under Florida or federal law to govern conduct or judicial determination under section 501.204, Florida Statutes. Before the Department can proceed further it must promulgate a rule which specifies that the ENCORE-type marketing plan is prohibited by section 501.204.
I believe appellants correctly rely on Lavers v. State, 326 So.2d 80 (Fla. 1st DCA), cert. denied, 336 So.2d 1184 (Fla. 1976). The First DCA determined that the Department was not entitled to a cease and desist order pursuant to section 501.208 *242 because the Department had not promulgated any rules which would tend to notify the appellants that their conduct was proscribed by section 501.204. Id. at 83. Thus, the court entering the administrative order had no standards for judging the conduct of the appellants. Id. The Lavers court also relied on Federal Trade Comm'n v. The Sperry and Hutchinson Co., 405 U.S. 233, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972). The Supreme Court held in Sperry that courts cannot label practices as "unfair" under the Federal Trade Commission Act, they can only affirm or vacate an agency's judgment to that effect. Id. 405 U.S. at 249, 92 S.Ct. at 908, 31 L.Ed.2d at 182.
Here, as in Lavers, there are no rules addressing appellants' marketing method or setting forth what conduct with respect to such marketing methods is deceptive or unfair pursuant to section 501.204. Appellants had no notice that their conduct violated section 501.204 and the trial court had no standard by which to determine whether appellants' conduct violates section 501.204. We should conclude that section 501.205 requires the Department to promulgate rules which specify the conduct prohibited by section 501.204.
Section 501.205 subjects all Department rules and administrative actions to the provisions of Chapter 120 of the Florida Administrative Code. Rule 120.54(1) sets forth an elaborate notification process to be followed before a non-emergency rule can be adopted. I believe that such process stresses the concern of our legislature for the public to be informed about what conduct a state agency intends to regulate.
Further, rule 120.54(9) grants a state agency special rulemaking powers when an immediate danger to the public health, safety or welfare requires emergency action. A state agency can adopt any rule necessitated by the immediate danger by publishing the reasons for the rule "at the time of, or prior to, its action" against the alleged violator. Fla.Adm.Code Rule 120.54(9)(a)3. The emergency rule remains in effect for up to ninety days which allows the agency time to pursue normal rulemaking procedures. Fla.Adm.Code Rule 120.54(9)(c). Therefore, the agency does not need an extensive list of rules one of which exactly matches the act or practice to be regulated. The agency can simply identify the questioned act or practice that creates the immediate danger to the public health, safety or welfare and enact a emergency rule to specifically deal with that situation.
Sub judice, I see no reason why the Department should not be required to proceed likewise.
NOTES
[1] A negative option plan requires a consumer to take affirmative action to reject the offer.
[2] Our opinion should not be taken as a comment on the merits of the case. We merely hold that the Department failed to establish a clear right to a temporary injunction. At the final hearing, the evidence adduced by the Department may well establish a clear right to a permanent injunction.
[3] However, it appears that the trial court based its ruling at least in part on chapter 817. The order granted the temporary injunction "in all respects as outlined in [Department's] motion for temporary injunction." The Department relied on chapter 817 in its motion for temporary injunction by adopting and incorporating its Complaint into its motion.
[4] We note that the ENCORE marketing plan does not involve any of the abuses cited by the Federal Trade Commission when it fashioned the rule to correct the abuses by prenotification negative option merchandisers:

Among other things, the ... rule:
1. Would require that all promotional material disclose the material terms of the selling plan;
2. Would require that a subscriber be given a minimum of 10 days in which to instruct the seller not to mail the selection;
3. Would require the seller to give full credit and also guarantee postage for merchandise returned by subscribers who were not obligated to receive it for a variety of reasons;
4. Would require the sellers to deliver promptly to subscribers any introductory or bonus merchandise;
5. Would require the sellers to terminate properly the membership of properly identified contract-complete subscriber;
6. Prohibit the seller from shipping without the subscriber's express consent substitute merchandise.
Statement of Basis and Purpose of rule 425, 38 Fed.Reg. 4907 (1973).