643 So.2d 22 (1994)
DEPARTMENT OF LEGAL AFFAIRS, State of Florida, Appellant,
v.
FATHER AND SON MOVING & STORAGE, INC., et al., Appellees.
No. 93-0979.
District Court of Appeal of Florida, Fourth District.
September 9, 1994.
Rehearing Denied October 28, 1994.
*23 Robert A. Butterworth, Atty. Gen., Tallahassee, and Charles M. Fahlbusch, Asst. Atty. Gen., Hollywood, for appellant.
Glen Rafkin of Greenspoon, Marder, Hirschfeld & Rafkin, P.A., Fort Lauderdale, for appellee Father and Son Moving & Storage, Inc.
Robert L. Shevin of Stroock & Stroock & Lavan, Miami, for appellees Family Moving & Storage, Inc., and JFD, Inc.
Robert D. Hertzberg, Miami, for appellee John Porcaro.
Michael J. Styles of Michael J. Styles, P.A., Fort Lauderdale, for appellees Father & Son Storage Warehouse, Inc., and Dominic Porcaro.
POLEN, Judge.
The Florida Department of Legal Affairs (D.L.A.) appeals from a final order dismissing with prejudice its complaint against Father and Son Moving & Storage.[1] We reverse.
The complaint filed by the Department of Legal Affairs alleges that Father and Son violated section 501.204, Florida Statutes (1991), which provides in pertinent part:
501.204. Unlawful acts and practices
(1) Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
(2) It is the intent of the legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1).
D.L.A. specifically alleged in its complaint that Father and Son's practice of providing consumers with "low ball" estimates by giving certain price quotes over the phone and then tacking on extra charges when the payments became due, constituted a "deceptive and unfair trade practice". D.L.A. also filed a motion for temporary injunction to enjoin such activity. Following a hearing, the trial court issued an order which not only denied the motion for temporary injunction but dismissed the entire action against Father and Son. The trial court based this dismissal on the fact that there was no administrative rule or regulation specifying that the conduct of Father and Son was prohibited. The trial court reasoned that section 501.205 required an administrative rule delineating exactly what conduct was prohibited by section 501.204. Section 501.205 provides in pertinent part:
(1) The department shall adopt rules which set forth with specificity acts or practices that violate this part and which prescribe procedural rules for the administration of this part. All rules and administrative actions taken by the department shall be pursuant to chapter 120.[2]
*24 The trial court further noted that there is no federal rule pertaining to "low ball" estimates to provide guidance as to what conduct is unfair and deceptive in accordance with section 501.204(2), requiring that great weight be given to the interpretations of the Federal Trade Commission and the federal courts relating to section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) (1994), in making such a determination. Without the appropriate administrative or federal rule for guidance as to what conduct is unfair and deceptive, the trial court concluded it would be intruding on the legislature's lawmaking and the executive's rulemaking function, if it made such a determination judicially. We disagree with the trial court's analysis and align ourselves with several other Florida cases recognizing that a specific rule or regulation is not necessary to the determination of what constitutes an unfair or deceptive practice under section 504.204(1).
In Storer Communication Inc. v. State Department of Legal Affairs, 591 So.2d 238 (Fla.4th DCA 1991), this court reversed the trial court's order granting a temporary injunction which enjoined the appellants from broadcasting a cable channel before the subscriber gave express approval to receive the new channel. This reversal was based on our conclusion that there was a lack of competent substantial evidence in the record to support the trial court's finding that the appellants misled or intended to mislead its customers, and thus no evidence to support a finding that their actions were unfair or deceptive. Id. at 241. However, this court also remanded without prejudice to seek permanent injunctive relief pursuant to its complaint, in spite of our recognition that there was no specific Federal Trade Commission Regulation or federal rule addressing the marketing plan the appellant was engaging in. Id. This suggests that this court recognized then, as it does now, that contrary to Father and Son's assertions, an act does not have to be violative of a specific rule or regulation in order to be considered deceptive. See also Deltona Corporation v. Jannotti, 392 So.2d 976 (Fla.1st DCA 1981) (holding that there was competent substantial evidence to support jury's verdict in favor of purchasers in their action against seller of house for unfair and deceptive trade practices in the sale of carpeting and sodding incident to the sale of the house, and specifically rejecting the appellant's argument that specific standards are required as to what constitutes an unfair trade practice).
Father and Son argues that Department of Legal Affairs v. Rogers, 329 So.2d 257 (Fla. 1976), supports its argument that a specific rule or regulation is needed in order to find an act deceptive or unfair under section 501.204. Father and Son contends that the court in Rogers specifically held that the Florida Deceptive and Unfair Trade Practices Act sufficiently put Rogers on notice that his conduct was unfair and deceptive because the gaming conduct in question was proscribed by Fla. Admin. Code Rule 2-907 adopted pursuant to section 501.205(1). Although the court in Rogers recognized that Rule 2-907, was a valid and reasonable rule, its specific holding was that sections 501.204 and 501.205 are constitutional as they are not vague and indefinite and do not constitute an unlawful delegation of legislative authority. Id. at 267. Its finding of constitutionality was not based on the existence of Rule 2-907. Rather, we interpret Rogers as supporting our holding that a specific rule or regulation pursuant to section 501.205 is not needed to find that conduct was unfair or deceptive in accordance with section 501.204(1).[3]
As previously noted, section 501.204(2) provides that great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts in interpreting the United States Federal Trade Commission Act. To preserve the constitutionality of this *25 statute, the court in Rogers interpreted section 501.204(2) as applying to Federal Trade Commission and federal decisions prior to the enactment of section 501. Thus, it appears that the court in Rogers recognized that both Federal Trade commission and federal decisions, in addition to specific regulations, can be utilized in determining what is unfair or deceptive in accordance with section 501.204. Nowhere in the Rogers decision does the supreme court state that a specific rule or regulation is needed to interpret an act as unfair or deceptive under 501.204(1). Further, the limitations imposed in Rogers, to Federal Trade Commission and federal decisions decided prior to the enactment of the statute in 1973, is of little significance since there are Federal Trade Commission and federal decisions predating the enactment which can be interpreted as supporting a finding that Father and Son's practice of providing "low ball" estimates is unfair and deceptive. In addition, in keeping with the holding in Rogers, in 1983, section 501.204(2) was amended to provide:
(2) It is the intent of the Legislature that in construing subsection (1), due consideration and great weight shall be given to the interpretation of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), as amended and in effect on April 1, 1983.
(Emphasis added.) Thus, it appears that interpretations of the federal courts and the Federal Trade Commission prior to April 1, 1983, are appropriate authorities for the trial court to rely on in determining whether Father and Son's "low-balling" practice is unfair and deceptive.
In General Transmission Corporation of Washington et al., 73 F.T.C. 399 (1968), the Federal Trade Commission held that conduct by General Transmission, which is analogous to Father and Son's conduct at bar, was deceptive. General Transmission was engaged in a system of luring customers into authorizing them to repair their cars even when the transmissions exhibited only minor defects. Id. at 424. Upon disassembling the transmissions, General Transmission would supposedly discover major defects necessitating much more costly repairs and would refuse to reinstall the transmission in its original condition. Id. The Commission specifically recognized that the customer was confronted with the Hobson's choice of paying a higher price or losing their automobile. Id. Similarly, in the situation before us, it is alleged that the customers of Father and Son were confronted with the Hobson's choice of paying an amount far in excess of what was estimated, or risk not being given their belongings from the moving truck. Due to the apparent similarities between General Transmission and the case at bar, and in accordance with section 501.204(2), great weight should be given to this 1968 Federal Trade Commission interpretation. This is especially true in light of the portion of the Commission's opinion noting the ease with which such deception could be applied to other fields. The commission specifically stated:
It is true that the practices giving rise to this proceeding concern the sale and repair of transmissions but it would be relatively easy for respondents to utilize their present illegal tactics in connection with the sale and repair of other automobile parts  for example, mufflers, brakes, or even engine tune ups and overhauls  or in connection with the sale and repair of radios, television sets, home appliances, and a number of other products.... In view of the ease with which respondent's deceptive practices could be adapted to other fields and in view of the magnitude of the deceptive practices here found and their effects on consumers, we think respondents should be prevented from engaging in their deceptive and fraudulent practices in connection with the sale of any other product or services.
See also Nationwide Safti-Brake, Distributors, Inc., 80 F.T.C. 873 (1973) (enjoining Nationwide from misrepresenting in any manner the nature, cost or extent of any service or related parts necessary to repair automotive components, as well as enjoining *26 them from using in any manner a sales plan or procedure wherein false, misleading or deceptive representations were used in order to obtain prospects for the sale of merchandise or services).
Additional Federal Trade Commission and federal cases, although not factually specific, offer guidance as to what constitutes an unfair and deceptive practice. See F.T.C. v. Colgate-Palmolive Company, 380 U.S. 374, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965) (recognizing that the words "deceptive practices" set forth a legal standard and they must get their final meaning from judicial construction; and that the proscriptions against unfair and deceptive acts are flexible and are to be defined with flexibility by the myriad of cases from the field of business); Peacock Buick, Inc., 86 F.T.C. 1532, 1545 (1975) (oral misrepresentations and failure to disclose relevant and material facts are unfair and deceptive acts); Spiegel, Inc. v. Federal Trade Comm., 540 F.2d 287 (7th Cir.1976) (a practice is unfair under the Federal Unfair Trade Practices Act when it offends public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers); and Chrysler Corp. v. F.T.C., 561 F.2d 357 (D.C. Cir.1977) (an advertisement is considered deceptive if it has the capacity to convey misleading impressions to consumers even though nonmisleading interpretations may be possible). These cases are clearly pertinent to the trial court's determination of whether Father and Son's actions were unfair or deceptive, since section 501.204 does not require there to be a specific federal case or Federal Trade Commission decision prohibiting a particular type of conduct, but rather provides that great weight should be given to their interpretations of what is unfair and deceptive. Therefore, in keeping with section 501.204(2), and as we have determined that a specific rule or regulation is not needed, we reverse and remand for the trial court to evaluate in accordance with the appropriate FTC and federal decisions, whether Father and Son's system of giving "low ball" estimates constitutes an unfair and deceptive practice.
We further question the trial court's ability to sua sponte dismiss the entire action without a motion or notice to appellant, as was done at bar. However, since the Department of Legal Affairs did not object below, nor raise this as a point on appeal, we only note our disapproval of the trial court's procedure. We do not, however, base our reversal on this procedural defect. See Surat v. Nu-Med Pembroke, Inc., 632 So.2d 1136 (Fla.4th DCA 1994).
GLICKSTEIN, J., concurs.
WARNER, J., concurs specially with opinion.
WARNER, Judge, concurring specially.
The issue presented in this case is whether section 501.205, Florida Statutes, was intended by the legislature as an exclusive delegation of authority to the executive branch to determine by rule what specific actions violate the statute or whether the legislature intended that the statute also allow judicial interpretation to expand the coverage of the act.
Department of Legal Affairs v. Rogers, 329 So.2d 257 (Fla. 1976), holds that section 501.204 is not unconstitutionally vague because "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or business" has acquired a meaning well settled in federal trade law to which section 501.204(2) directs the decision-maker. It also holds that section 501.205 is not an improper attempt to delegate legislative authority because the rule-making authority of the executive branch is guided by adequate standards of the act. It did not answer the question present in this case, namely whether that rule-making authority is exclusive.
The "Definitions" section of the act provides support for the construction of the majority opinion. Section 501.203(3) defines "Violation of this part" as meaning "either a violation of a provision of this part or a violation of a rule promulgated pursuant to this part." § 501.203(3), Fla. Stat. (1991). Furthermore, section 501.2075 provides a civil *27 penalty for any entity "who engages in any act or practice declared in this part to be unlawful" or "who violates any of the rules of the Department of Legal Affairs promulgated under this part." If, as appellee suggests, a business can only be charged with an unfair or deceptive trade practice which is specified by rule, then the first part of the definition and the penalty sections are surplusage. However, statutes should be construed so as to give effect, when possible, to all of their terms. Vocelle v. Knight Bros. Paper Co., 118 So.2d 664 (Fla.1st DCA 1960). Construing the statute as the majority does, allowing the department to prove in court either that a specific business is engaging in an unfair practice or that it violated a specific prohibitory rule, harmonizes all of the sections of the statute.
Moreover, this construction is consistent with the policy and intent of the statute. As Justice England noted in his concurring opinion to Rogers:
The specificity for which appellee argues  the "laundry list" form of prohibited marketplace activities  was present in the law of Florida for years before the little FTC act was enacted [footnote omitted]. It was wholly inadequate for its intended purposes, despite the presence of both criminal and administrative sanctions. Where the Legislature has pursued a policy, which is indisputably within its purview, by precise and narrow means (a so-called "rifle-shot" approach), courts should generally be reluctant to invalidate amendatory laws which endeavor to accomplish the same legislative purposes by other, more flexible means. Particularly is this true, as here, where the original approach to the problem lacked ostensible success and one principle [sic], documented cause for failure appeared to be the ease by which the legislative targets avoided direct hits.
Id. at 268. To require a specific prohibitory rule for every act which may be considered unfair or deceptive would again put unscrupulous businesses one step ahead of Florida's ability to combat such practices, for which our law extends no tolerance. I agree that the statute does not compel, and in fact rejects, such a rigid approach.
NOTES
[1] The complaint also named as defendants approximately sixteen other moving companies which, in addition to Father and Son, are all owned by John Porcaro. All these parties will be collectively referred to as Father and Son.
[2] The word "shall" as contained in the first sentence of this section was changed to "may" pursuant to an amendment effective June 30, 1993. However, this amendment came after the trial court's order of dismissal, and does not form any basis of our analysis here.
[3] Father and Son also cited Lavers v. State Dept. of Legal Affairs, 326 So.2d 80 (Fla.1st DCA 1976), to support its claim that a specific rule is needed to ascertain what conduct is unfair and deceptive. However, in Lavers, the court did not require a specific rule or regulation, but only ascertainable standards of what is proscribed by 501.204. Id. Lavers in no way suggests that Federal Trade Commission interpretations and federal decisions defining what conduct is unfair and deceptive cannot be used to ascertain what conduct is proscribed.