490 U.S. 93 (1989)
CALIFORNIA ET AL.
v.
ARC AMERICA CORP. ET AL.
No. 87-1862.
Supreme Court of United States.
Argued February 27, 1989
Decided April 18, 1989
APPEAL FROM THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
*94 Thomas Greene, Supervising Deputy Attorney General of California, argued the cause for appellants. With him on the briefs were John K. Van de Kamp, Attorney General, Andrea Sheridan Ordin, Chief Assistant Attorney General, Sanford N. Gruskin, Assistant Attorney General, Owen Lee *95 Kwong, and H. Chester Horne, Jr., Deputy Attorney General, Don Siegelman, Attorney General of Alabama, and James B. Prude, Assistant Attorney General, Robert K. Corbin, Attorney General of Arizona, Hubert H. Humphrey III, Attorney General of Minnesota, Stephen P. Kilgriff, Deputy Attorney General, and Kathleen M. Mahoney, Special Assistant Attorney General.
Roy T. Englert, Jr., argued the cause for the United States as amicus curiae urging reversal. With him on the briefs were Solicitor General Fried, Assistant Attorney General Rule, Deputy Solicitor General Merrill, Deputy Assistant Attorney General Starling, Catherine G. O'Sullivan, and Marion L. Jetton.
Theodore B. Olson argued the cause for appellees. With him on the brief for appellee ARC America Corp. were Phillip H. Rudolph, John J. Hanson, and John J. Waller, Jr. David J. Leonard and David H. Nix filed a brief for appellees Class Members Allied Concrete, Inc., et al.[*]
*96 JUSTICE WHITE delivered the opinion of the Court.
In Illinois Brick Co. v. Illinois, 431 U. S. 720 (1977), the State of Illinois brought suit on its own behalf and on behalf *97 of a number of local governmental entities seeking treble damages under § 4 of the Clayton Act, 38 Stat. 731, as amended, 15 U. S. C. § 15(a),[1] for an alleged conspiracy to fix the price of concrete block in violation of § 1 of the Sherman Act, 26 Stat. 209, as amended, 15 U. S. C. § 1. The State and the local governments were all indirect purchasers of concrete block  that is, they did not purchase concrete block directly from the price-fixing defendants but rather purchased products or contracted for construction into which the concrete block was incorporated by a prior purchaser. The Court held that, with limited exceptions,[2] only overcharged direct purchasers, and not subsequent indirect purchasers, were persons "injured in [their] business or property" within the meaning of § 4, and that therefore the State of Illinois was not entitled to recover under federal law for the portion of the overcharge passed on to it.
Appellants in the present case, the States of Alabama, Arizona, California, and Minnesota, brought suit in the appropriate federal courts on their own behalf and on behalf of classes of all governmental entities within each State, excluding the Federal Government, seeking treble damages under § 4 of the Clayton Act for an alleged nationwide conspiracy to fix prices of cement in violation of § 1 of the Sherman Act. Appellants are, at least in part, indirect purchasers of cement, and so under Illinois Brick, like the State of Illinois in that *98 case, would not be entitled to recover on their indirect purchaser claims under § 4 unless those claims fell within one of the exceptions. In their complaints, however, appellants also alleged violations of their respective state antitrust laws under which, as a matter of state law, indirect purchasers arguably are allowed to recover for all overcharges passed on to them by direct purchasers.[3] The claims under these state indirect purchaser statutes are the focus of this case.
Numerous similar actions were filed by other plaintiffs in various District Courts, and the actions were transferred to the United States District Court for the District of Arizona for coordinated pretrial proceedings. In re Cement and Concrete Antitrust Litigation, 437 F. Supp. 750 (JPML 1977). The District Court certified the actions as class actions and established a number of plaintiff classes. Between July 1979 and October 1981, several major defendants settled *99 with the various classes, resulting in a settlement fund in excess of $32 million. The settlements left distribution of the fund for later resolution, subject to approval of the District Court.
Appellants sought payment out of the settlement fund for their state indirect purchaser claims. Appellees, class members who are direct purchasers, objected. When the District Court approved a plan for distributing the settlement fund, it refused to allow the claims against the fund pursuant to state indirect purchaser statutes. According to the District Court, "[s]uch statutes are clear attempts to frustrate the purposes and objectives of Congress, as interpreted by the Supreme Court in Illinois Brick, and, accordingly, are pre-empted by federal law." App. to Juris. Statement A-31 (emphasis omitted).
The Ninth Circuit affirmed. In re Cement and Concrete Antitrust Litigation, 817 F. 2d 1435 (1987). The Court of Appeals identified "three purposes or objectives of federal antitrust law in this context," as defined by Illinois Brick and Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U. S. 481 (1968): avoiding unnecessarily complicated litigation; providing direct purchasers with incentives to bring private antitrust actions; and avoiding multiple liability of defendants. 817 F. 2d, at 1445. If state laws permitting indirect purchasers to recover were construed to restrict direct purchasers to suing only for the amount of any overcharge they have absorbed, the Court of Appeals was of the view that state law conflicted directly with federal law as construed in Illinois Brick. Alternatively, if state law permitted indirect purchasers to bring claims for damages in addition to the claims brought by direct purchasers, it would "impermissibly interfere with the three policy goals outlined in Hanover Shoe and Illinois Brick." 817 F. 2d, at 1445. The Court of Appeals therefore held that state indirect purchaser claims that did not satisfy any exception to Illinois Brick were pre-empted.
*100 Appellants appealed to this Court, invoking our jurisdiction under 28 U. S. C. § 1254(2). We noted probable jurisdiction, 488 U. S. 814 (1988), and we now reverse.
We should first make it clear exactly what the issue is before us. These cases alleged violations of both the Sherman Act and state antitrust Acts. The settlements, as we understand it, covered both the federal and the state-law claims; the settlement fund was intended to be distributed in complete satisfaction of those claims. Under federal law, no indirect purchaser is entitled to sue for damages for a Sherman Act violation, and there is no claim here that state law could provide a remedy for the federal violation that federal law forbids. Had these cases gone to trial and a Sherman Act violation been proved, only direct purchasers would have been entitled to damages for that violation, and there is no suggestion by the parties that the same rule should not apply to distributing that part of the fund that was meant to settle the Sherman Act claims. The issue before us is whether this rule limiting recoveries under the Sherman Act also prevents indirect purchasers from recovering damages flowing from violations of state law, despite express state statutory provisions giving such purchasers a damages cause of action.
The path to be followed in pre-emption cases is laid out by our cases. It is accepted that Congress has the authority, in exercising its Article I powers, to pre-empt state law. In the absence of an express statement by Congress that state law is pre-empted, there are two other bases for finding pre-emption. First, when Congress intends that federal law occupy a given field, state law in that field is pre-empted. Pacific Gas & Electric Co. v. State Energy Resources Conservation and Development Comm'n, 461 U. S. 190, 212-213 (1983). Second, even if Congress has not occupied the field, state law is nevertheless pre-empted to the extent it actually conflicts with federal law, that is, when compliance with both state and federal law is impossible, Florida Lime & Avocado Growers, Inc. v. Paul, 373 U. S. 132, 142-143 (1963), or *101 when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Hines v. Davidowitz, 312 U. S. 52, 67 (1941). See, e. g., Silkwood v. Kerr-McGee Corp., 464 U. S. 238, 248 (1984).
In this case, in addition, appellees must overcome the presumption against finding pre-emption of state law in areas traditionally regulated by the States. See Hillsborough County v. Automated Medical Laboratories, Inc., 471 U. S. 707, 716 (1985). When Congress legislates in a field traditionally occupied by the States, "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U. S. 218, 230 (1947). Given the long history of state common-law and statutory remedies against monopolies and unfair business practices,[4] it is plain that this is an area traditionally regulated by the States. Cf. Florida Lime & Avocado Growers, supra, at 146 (regulation to "prevent the deception of consumers").
In light of these principles, the Court of Appeals erred in holding that the state indirect purchaser statutes are pre-empted. There is no claim that the federal antitrust laws expressly pre-empt state laws permitting indirect purchaser recovery.[5] Moreover, appellees concede that Congress has not pre-empted the field of antitrust law. Brief for Appellee *102 ARC America Corp. 10, n. 5; Brief for Appellees Allied Concrete, Inc., et al. 4. Congress intended the federal antitrust laws to supplement, not displace, state antitrust remedies. 21 Cong. Rec. 2457 (1890) (remarks of Sen. Sherman); see Cantor v. Detroit Edison Co., 428 U. S. 579, 632-635 (1976) (Stewart, J., dissenting). And on several prior occasions, the Court has recognized that the federal antitrust laws do not pre-empt state law. See Watson v. Buck, 313 U. S. 387, 403 (1941); Puerto Rico v. Shell Co., 302 U. S. 253, 259-260 (1937); cf. Exxon Corp. v. Governor of Maryland, 437 U. S. 117, 133-134 (1978).
Appellees' only contention is that state laws permitting indirect purchaser recoveries pose an obstacle to the accomplishment of the purposes and objectives of Congress. State laws to this effect are consistent with the broad purposes of the federal antitrust laws: deterring anticompetitive conduct and ensuring the compensation of victims of that conduct. Illinois Brick, 431 U. S., at 746; Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U. S. 477, 485-486 (1977). The Court of Appeals concluded, however, that such laws are inconsistent with and stand as an obstacle to effectuating the congressional purposes and policies identified in Hanover Shoe and Illinois Brick.[6] In this respect, the Court of Appeals has misunderstood both Hanover Shoe and Illinois Brick.
Neither of those cases addressed the pre-emptive force of the federal antitrust laws. Neither case contains any discussion of state law or of the relevant standards for pre-emption of state law. As we made clear in Illinois Brick, the issue *103 before the Court in both that case and in Hanover Shoe was strictly a question of statutory interpretation  what was the proper construction of § 4 of the Clayton Act. See, e. g., 431 U. S., at 736.
It is one thing to consider the congressional policies identified in Illinois Brick and Hanover Shoe in defining what sort of recovery federal antitrust law authorizes; it is something altogether different, and in our view inappropriate, to consider them as defining what federal law allows States to do under their own antitrust law. As construed in Illinois Brick, § 4 of the Clayton Act authorizes only direct purchasers to recover monopoly overcharges under federal law. We construed § 4 as not authorizing indirect purchasers to recover under federal law because that would be contrary to the purposes of Congress. But nothing in Illinois Brick suggests that it would be contrary to congressional purposes for States to allow indirect purchasers to recover under their own antitrust laws.
The Court of Appeals also erred in concluding that state indirect purchaser statutes interfere with accomplishing the purposes of the federal law that were identified in Illinois Brick. First, the Court of Appeals concluded that state indirect purchaser statutes interfere with the congressional purpose of avoiding unnecessarily complicated proceedings on federal antitrust claims. But these state statutes cannot and do not purport to affect remedies available under federal law. Furthermore, state indirect purchaser actions will not necessarily be brought in federal court. 817 F. 2d, at 1445. Unlike the federal indirect purchaser claims asserted in Illinois Brick, which would have been exclusively within the jurisdiction of the federal courts, 15 U. S. C. §§ 15(a), 26, claims under state indirect purchaser statutes could be brought in state courts, separately from federal actions brought by direct purchasers. Moreover, federal courts have the discretion to decline to exercise pendent jurisdiction over state indirect purchaser claims, even if those claims are brought in *104 the first instance in federal court. See Mine Workers v. Gibbs, 383 U. S. 715, 725-726 (1966). Since many state indirect purchaser actions would be heard in state courts, at least when the federal courts determined that hearing those claims would be overly burdensome, any complication of federal direct purchaser actions in federal court would be minimal.
Second, the Court of Appeals reasoned that allowing state indirect purchaser claims could reduce the incentives of direct purchasers to bring antitrust actions by reducing their potential recoveries. The presence of indirect purchaser claims would reduce settlement offers to direct purchasers, the Court of Appeals believed, and if the total liability were to exhaust a defendant's assets, the direct purchasers would have to share the defendant's estate in bankruptcy with indirect purchasers. But the Court in Illinois Brick was not concerned with the risk that a plaintiff might not be able to recover its entire damages award or might be offered less to settle. Indeed, taken to its extreme, the Court of Appeals' logic would lead to the pre-emption of any state-law claims against antitrust defendants, even if wholly unrelated, because the presence of other litigation could threaten the defendants with bankruptcy and reduce their willingness to settle. Illinois Brick was concerned that requiring direct and indirect purchasers to apportion the recovery under a single statute  § 4 of the Clayton Act  would result in no one plaintiff having a sufficient incentive to sue under that statute. State indirect purchaser statutes pose no similar risk to the enforcement of the federal law.
Appellees argue that because the defendants in these antitrust actions have settled and there is a limited settlement fund, the indirect purchasers' claims are pre-empted because those claims will likely reduce the amount that can be paid from the fund to direct purchasers.[7] But as we said earlier, *105 the settlement covered both federal and state-law claims, and whatever amount is allocable to federal claims will be distributed only to direct purchasers. Indirect purchasers will participate only in distributing the funds available to claimants under state law. Even if the settlement fund is not to be divided between state and federal-law claimants, the settlement necessarily was intended to dispose of all claimants, whether claiming under federal or state law and whether direct or indirect purchasers. That direct purchasers may have to share with indirect purchasers is a function of the fact and form of settlement rather than the impermissible operation of state indirect purchaser statutes.
Third, the Court of Appeals concluded that state indirect purchaser claims might subject antitrust defendants to multiple liability, in contravention of the "express federal policy" condemning multiple liability. 817 F. 2d, at 1446 (citing Illinois Brick; Associated General Contractors of California, Inc. v. Carpenters, 459 U. S. 519, 544 (1983); and Blue Shield of Virginia v. McCready, 457 U. S. 465, 474-475 (1982)). But Illinois Brick, as well as Associated General Contractors and Blue Shield, all were cases construing § 4 of the Clayton Act; in none of those cases did the Court identify a federal policy against States imposing liability in addition to that imposed by federal law. Ordinarily, state causes of action are not pre-empted solely because they impose liability over and above that authorized by federal law, see Silkwood v. Kerr-McGee Corp., 464 U. S., at 257-258; California v. Zook, 336 U. S. 725, 736 (1949), and no clear purpose of Congress indicates that we should decide otherwise in this case.
When viewed properly, Illinois Brick was a decision construing the federal antitrust laws, not a decision defining the interrelationship between the federal and state antitrust laws. The congressional purposes on which Illinois Brick was based provide no support for a finding that state indirect *106 purchaser statutes are pre-empted by federal law. The judgment of the Court of Appeals is therefore reversed.
So ordered.
JUSTICE STEVENS and JUSTICE O'CONNOR took no part in the consideration or decision of this case.
NOTES
[*] Briefs of amici curiae urging reversal were filed for Thirty-five States et al. by J. Joseph Curran, Jr., Attorney General of Maryland, Michael F. Brockmeyer, and Ellen S. Cooper, Alan M. Barr, and Craig J. Hornig, Assistant Attorneys General, Grace Berg Schaible, Attorney General of Alaska, and Richard D. Monkman, John Steven Clark, Attorney General of Arkansas, Duane Woodard, Attorney General of Colorado, and Thomas P. McMahon, First Assistant Attorney General, Joseph I. Lieberman, Attorney General of Connecticut, and Robert M. Langer and Steven M. Rutstein, Assistant Attorneys General, Charles M. Oberly III, Attorney General of Delaware, and David G. Culley, Deputy Attorney General, Robert A. Butterworth, Attorney General of Florida, Warren Price III, Attorney General of Hawaii, and Robert A. Marks, Rod Kimura, and Ann Catherine Blank, Deputy Attorneys General, Neil F. Hartigan, Attorney General of Illinois, Linley E. Pearson, Attorney General of Indiana, and Frank A. Baldwin, Deputy Attorney General, Thomas J. Miller, Attorney General of Iowa, and John R. Perkins, Deputy Attorney General, Robert T. Stephan, Attorney General of Kansas, and David M. Cooper, Assistant Attorney General, William J. Guste, Jr., Attorney General of Louisiana, James E. Tierney, Attorney General of Maine, and Stephen L. Wessler, Deputy Attorney General, James M. Shannon, Attorney General of Massachusetts, and George Weber, Assistant Attorney General, Frank J. Kelley, Attorney General of Michigan, Michael C. Moore, Attorney General of Mississippi, and Robert E. Sanders, Special Assistant Attorney General, William L. Webster, Attorney General of Missouri, and Tom A. Glassberg, Assistant Attorney General, Mike Greely, Attorney General of Montana, and Joe Roberts, Assistant Attorney General, Robert M. Spire, Attorney General of Nebraska, and Dale A. Comer, Assistant Attorney General, Stephen E. Merrill, Attorney General of New Hampshire, and Terry L. Robertson, Senior Assistant Attorney General, W. Cary Edwards, Attorney General of New Jersey, and Laurel A. Price, Deputy Attorney General, Robert Abrams, Attorney General of New York, Anthony J. Celebrezze, Jr., Attorney General of Ohio, and Doreen C. Johnson, Assistant Attorney General, Robert H. Henry, Attorney General of Oklahoma, and Jane Wheeler, Assistant Attorney General, James E. O'Neil, Attorney General of Rhode Island, and Robyn Y. Davis, Assistant Attorney General, Roger A. Tellinghuisen, Attorney General of South Dakota, W. J. Michael Cody, Attorney General of Tennessee, and Perry A. Craft, Deputy Attorney General, Jim Mattox, Attorney General of Texas, Mary F. Keller, Executive Assistant Attorney General, and Allene D. Evans, Assistant Attorney General, David L. Wilkinson, Attorney General of Utah, and Richard M. Hagstrom, Assistant Attorney General, Mary Sue Terry, Attorney General of Virginia, and Allen L. Jackson, Assistant Attorney General, Kenneth O. Eikenberry, Attorney General of Washington, and Carol A. Smith, Assistant Attorney General, Charles G. Brown, Attorney General of West Virginia, C. William Ullrich, First Deputy Attorney General, and Dan Huck, Deputy Attorney General, Donald J. Hanaway, Attorney General of Wisconsin, and Kevin J. O'Connor, Assistant Attorney General, and Joseph B. Meyer, Attorney General of Wyoming; for the Consumers Union of U. S., Inc., by Alan Mark Silbergeld; and for the National Conference of State Legislatures et al. by Benna Ruth Solomon, David J. Burman, and Thomas L. Boeder.

Briefs of amici curiae urging affirmance were filed for the Business Roundtable by Thomas B. Leary and Janet L. McDavid; for the Chamber of Commerce of the United States by Bert W. Rein, James M. Johnstone, and Stephen A. Bokat; and for the National Association of Manufacturers by Otis Pratt Pearsall, Philip H. Curtis, Ronald C. Redcay, Jan S. Amundson, and Quentin Riegel.
Robert K. Corbin, Attorney General, and Anthony B. Ching, Solicitor General, filed a brief for the State of Arizona as amicus curiae.
[1] Section 4 provides as follows:

"[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U. S. C. § 15(a).
[2] The Court noted two possible exceptions: when the direct purchaser and the indirect purchaser have entered into pre-existing cost-plus contracts, Illinois Brick Co. v. Illinois, 431 U. S., at 732, n. 12, and when the direct purchaser is owned or controlled by the indirect purchaser, id., at 736, n. 16.
[3] The statutes of Alabama, California, and Minnesota expressly allow indirect purchasers to sue. See Ala. Code § 6-5-60(a) (1975) (allowing recovery by any person "injured or damaged . . . , direct or indirect"); Cal. Bus. & Prof. Code Ann. § 16750(a) (West Supp. 1989) (allowing recovery "regardless of whether such injured person dealt directly or indirectly with the defendant"); Minn. Stat. § 325D.57 (1988) (allowing recovery by any person "injured directly or indirectly"). A number of other jurisdictions have similar statutes. Colo. Rev. Stat. § 6-4-106 (Supp. 1988); D. C. Code § 28-4509(a) (1981); Haw. Rev. Stat. § 480-14(c) (1985); Ill. Rev. Stat., ch. 38, ¶ 60-7(2) (1988); Kan. Stat. Ann. § 50-801(b) (Supp. 1988); Md. Com. Law Code Ann. § 11-209 (1983); Mich. Comp. Laws Ann. § 445.778 (West Supp. 1988); Miss. Code Ann. § 75-21-9 (1972); N. M. Stat. Ann. § 57-1-3(A) (1987); R. I. Gen. Laws § 6-36-12(g) (1985); S. D. Codified Laws § 37-1-33 (1986); Wis. Stat. § 133.18 (1987-1988).

The Arizona statute, Ariz. Rev. Stat. Ann. § 44-1408(A) (1987), generally follows the language of the Clayton Act, but it might be interpreted as a matter of state law as authorizing indirect purchasers to recover. This is appellants' position. See Brief for Appellants 19, n. 6; Juris. Statement 9. Appellees dispute this interpretation, Brief for Appellee ARC America Corp. 21, n. 14, and the District Court and the Court of Appeals did not pass on this question given their holdings that even if the statute was so interpreted it was pre-empted by federal law. We express no opinion on this question of Arizona law.
[4] At the time of the enactment of the Sherman Act, 21 States had already adopted their own antitrust laws. Mosk, State Antitrust Enforcement and Coordination with Federal Enforcement, 21 A. B. A. Antitrust Section 358, 363 (1962). Moreover, the Sherman Act itself, in the words of Senator Sherman, "does not announce a new principle of law, but applies old and well recognized principles of the common law to the complicated jurisdiction of our State and Federal Government." 21 Cong. Rec. 2456 (1890).
[5] Cf. National Cooperative Research Act of 1984, 15 U. S. C. § 4303(c) (1982 ed., Supp. V); Export Trading Company Act of 1982, 15 U. S. C. §§ 4016, 4002(a)(7).
[6] In one respect, the Court of Appeals was overly narrow in its description of the congressional purposes identified in Illinois Brick. In Illinois Brick, the Court was concerned not merely that direct purchasers have sufficient incentive to bring suit under the antitrust laws, as the Court of Appeals asserted, but rather that at least some party have sufficient incentive to bring suit. Indeed, we implicitly recognized as much in noting that indirect purchasers might be allowed to bring suit in cases in which it would be easy to prove the extent to which the overcharge was passed on to them. See 431 U. S., at 732, n. 12.
[7] Contrary to the Court of Appeals' suggestion, 817 F. 2d, at 1445, there is no contention here that the state indirect purchaser statutes themselves seek to limit the recovery direct purchasers can obtain under federal law.