283 F.Supp.2d 1088 (2003)
Frederick L. SAMPLE, et al., Plaintiffs,
v.
MONSANTO CO., et al., Defendants.
No. 4:01CV65 RWS.
United States District Court, E.D. Missouri, Eastern Division.
September 19, 2003.
*1089 John W. Barrett, Richard R. Barrett, Patrick M. Barrett, Barrett Law Office, Lexington, MS, Thomas F. Crosby, Winters and Brewster, John Randall Patchett, Patchett Law Office, Marion, IL, W. Gordon Ball, W. Gordon Ball, Esq., Knoxville, TN, William J. Ban, Vincent Briganti, Lowey and Dannenberg, White Plains, NY, Michael Straus, Straus and Boies, L.L.P., Birmingham, AL, Ann D. White, Mager and White, P.C., Jenkintown, PA, Melissa Price Smith, Copeland and Thompson, Joseph F. Devereux, Jr., Richard P. Sher, Devereux and Murphy, Clayton, MO, Richard S. Lewis, Elizabeth H. Cronise, Cohen and Milstein, Washington, DC, Daniel E. Gustafson, Heins and Mills, Minneapolis, MN, Robert S. Palmer, Manuel J. Dominguez, Berman and Devalerio, West Palm Beach, FL, Robert N. Kaplan, Kaplan and Kilsheimer, Linda P. Nussbaum, Cohen and Milstein, New York, NY, Michael W. Sobol, Elizabeth J. Cabraser, Lieff and Cabraser, San Francisco, CA, Irwin Levin, Cohen and Malad, Indianapolis, IN, for plaintiffs.
Stephen H. Rovak, Partner, Stephen J. O'Brien, Shannon M. Blankinship, Sonnenschein and Nath, LLP, Duane L. Coleman, Andrew Rothschild, C. David Goerisch, Lewis and Rice, Sean M. Murphy, Wesley R. Powell, Keila D. Ravelo, Guy C. Quinlan, Joseph Floriani, Ignatius Grande, Michael C. Naughton, Kathryn McCarthy, Clifford Chance US L.L.P., Glenn E. Davis, Daniel C. Nelson, Armstrong Teasdale, LLP, Lisa A. Pake, Haar and Woods, *1090 LLP, St. Louis, MO, Phillip A. Bradley, McKenna and Long, Atlanta, GA, Philip D. Bartz, Cameron Cohick, Donna M. Donlon, Stephen M. Lastelic, Dean Jablonski, McKenna and Long, James C. Egan, Jr., Clifford Chance US L.L.P., Washington, DC, James B. Bleyer, Bleyer and Bleyer, Marion, IL, Jacob E. Tyler, Dewey Ballantine, LLP, Michael Gallagher, Robert A. Milne, Vincent R. FitzPatrick, Jr., Jack E. Pace, III, White and Case, New York, NY, Timothy G. Barber, Bradley C. Morris, K. Matthew Miller, Womble and Carlyle, Charlotte, NC, for defendants.

MEMORANDUM AND ORDER
SIPPEL, District Judge.
This matter is before the Court on motions for summary judgment.
In this putative class action, corn and soybean farmers claim that defendants Monsanto, Pioneer and Syngenta conspired to fix, raise, maintain, or stabilize prices on genetically modified (GM) Roundup Ready soybean seeds and Yieldgard corn seeds in violation of the Sherman Act, 15 U.S.C. § 1. According to the complaint, they did so by agreeing to impose a surcharge, known as a "technology fee" or a "premium," on all purchases of Roundup Ready soybean seeds and Yieldgard corn seeds. Defendants move for judgment as a matter of law on the antitrust claims asserted by plaintiff C-K Farms on the ground that it never purchased soybean seed from any of the defendants.
Plaintiffs Frederick Sample and George Naylor do not bring antitrust claims against the defendants because they grew conventional, or non-genetically modified, soybeans and corn. Instead, these plaintiffs bring separate putative class action claims against Monsanto, alleging damages under public nuisance and negligence theories as a result of Monsanto's introduction of GM corn and soybean seeds into the market. Monsanto contends that the "economic loss" doctrine bars the tort claims as a matter of law.
Monsanto's motion for summary judgment on the tort claims will be granted. Summary judgment will be denied on the antitrust claims.

Standards Governing Summary Judgment
The standards for summary judgment are well-settled. In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323, 106 S.Ct. 2548. With these standards in mind, I review the facts in this case.

Background Facts
Despite the procedural complexity of this action, there are relatively few material *1091 facts for purposes of deciding these motions.

Antitrust Claims
Plaintiffs' antitrust claims are brought on behalf of farmers who purchased Roundup Ready soybean seed or Yield-Gard corn seed. C-K Farms purports to represent the soybean farmer "who purchases Roundup Ready soybean seeds (other than as distributors) or the right to grow the seeds, directly from one of the defendants."
C-K Farms did not purchase Roundup Ready soybean seed from any of the defendants during the growing years at issue in this case. Instead, C-K Farms purchased its seed from Dennis Springer and Calvin Josten, who are independent dealers. However, Springer and Josten invoiced C-K Farms for the technology fee, collected the fee and then remitted it directly to Monsanto. C-K Farms also entered into a licensing agreement directly with Monsanto to grow the soybean seed.
Tort Claims
Sample and Naylor purport to represent a class of farmers who grow non-GM corn and soybeans. Plaintiffs' amended complaint alleged that their crops were "contaminated" by Monsanto's GM seeds and stated negligence and public nuisance claims against Monsanto for its introduction of these seeds into the marketplace. For example, plaintiffs' amended complaint alleged that Monsanto's GM seeds caused environmental problems, such as "toxicity to soil microorganisms and non-target insects such as butterflies," (Pls.' Amended Complaint at ¶ 134), and "contamination caused by cross-pollination and commingling." (Id. at 133). Plaintiffs asked the Court "to enter an injunction requiring Monsanto to control and/or prevent contamination of non-GM crops, soil and farming, storage and transportation equipment; to implement and monitor an effective Insect Resistance Management Plan; and to adequately test GM seeds for human health and environmental safety ..." (Id. at VIII(j)).
However, at the class certification hearing, plaintiffs' counsel abandoned these allegations in response to questioning by the Court:
MR. LEWIS: There is a biological phenomenon called cross pollination with corn. It doesn't exist in soy, and quite frankly, that would be an individual issue, Your Honor. The claims of this tort class are based on commingling, our word `contamination,' in the U.S. marketing channel, not where the wind blows in Iowa and where and if it blows of the fence of a particular farmer's property.
(Docket # 391 at 404) (emphasis added). Counsel explained that the term "contamination" did not refer to physical injury to the person or property of the plaintiffs, but to the "U.S. marketing channel." (Id. at 403). Plaintiffs allege that non-GM farmers lost revenue because the European community rejected Monsanto's genetically modified products and boycotted all American corn and soy as a result. No evidence of physical injury to the person or property of the named plaintiffs or any proposed class member was offered by plaintiffs in opposition to summary judgment or in support of class certification.
Sample resides, farms and sells his crops in Illinois. He has grown non-GM soybeans and has never grown GM soybeans. Sample's crops have never been tested to detect the presence of GM traits, and there is no evidence that his conventional soybeans were ever contaminated by GM soybeans. Sample suffered no injury to his person or his property relating to the presence of GM soybeans on the market.
*1092 Naylor resides, farms and sells his crops in Iowa. He grows non-GM corn and soybeans and has never grown GM corn or soybeans. In 2001, a portion of Naylor's soybean crop was tested for the presence of GM traits. None were found. Naylor's corn crops have never been tested for GM traits. There is no evidence that Naylor's corn or soybean crops were contaminated by GM seed. Naylor suffered no injury to his person or his property relating to the presence of GM corn and soybeans on the market.

Discussion

Tort Claims
Monsanto claims that it is entitled to summary judgment on the public nuisance and negligence claims asserted by Sample and Naylor because the "economic loss" doctrine bars tort claims that are not based on physical injury to persons or property. Plaintiffs offer three arguments in opposition to summary judgment. Each fails.
First, plaintiffs argue that they may recover solely economic losses for their tort claims because I previously denied Monsanto's motion to dismiss on this ground. Plaintiffs misstate my prior Order and their first amended complaint, which contained numerous allegations regarding physical contamination of soil and crops. These allegations, if proven, were sufficient to state tort claims against Monsanto. Plaintiffs have now abandoned these allegations and seek to recover solely economic damages for their state tort claims against Monsanto. Having admitted that their pleaded allegations of physical "contamination" are no longer at issue in this case, plaintiffs cannot argue that summary judgment should be denied for the same reason that Monsanto's motion to dismiss was denied.
Second, plaintiffs contend that the economic loss doctrine should not apply because some jurisdictions permit recovery solely of special damages, such as loss of income, in public nuisance actions. These jurisdictions, however, do not include Illinois or Iowa.[1] In Illinois, "[t]his rule limits the types of damages plaintiffs may recover in tort. Physical injuries to persons or property are compensable; solely economic injuries are not." In re StarLink Corn Prods. Liability Litig., 212 F.Supp.2d 828, 838 (N.D.Ill.2002). Similarly, under Iowa law a plaintiff "cannot maintain a claim for purely economic damages arising out of a defendant's alleged negligence...." Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp., 345 N.W.2d 124, 128 (Iowa 1984); Audio Odyssey, Ltd. v. United States, 243 F.Supp.2d 951, 961-62 (S.D.Iowa 2003).
The Starlink case is instructive. In that case, farmers claimed that genetically modified Starlink corn contaminated the *1093 United States' corn supply, thereby increasing their costs and depressing corn prices. The farmers, who did not grow the Starlink corn, brought public nuisance and negligence claims against the seed manufacturer and a distributor for economic damages. Applying Illinois law, the district court denied a motion to dismiss the farmers' tort claims under the economic loss doctrine because plaintiffs also alleged that their crops had been physically contaminated by Starlink corn. It held:
To the extent plaintiffs allege that their crops were themselves contaminated, either by cross-pollination in the fields or by commingling later in the distribution chain, they have adequately stated a claim for harm to property. Once plaintiffs have established this harm they may be entitled to compensation for certain economic losses. But we caution that proving direct harm to their own property is a predicate to any recovery. We leave for another day the question of what, if any, consequential damages they may also collect ....
Id. at 842-43. (emphasis added)
As in StarLink, plaintiffs alleged physical injury to their property and therefore survived dismissal of the amended complaint. However, their claims against Monsanto are now based solely on the theory that they lost revenue because the European Union (EU) has rejected GM seed and boycotted all American corn and soy as a result. The evidence is undisputed that Samples and Naylor did not sustain physical "contamination" or injury to their property. As such, the economic loss doctrine precludes recovery for their nuisance claims as a matter of law.
Plaintiffs also argue that the doctrine should not bar their negligence claims because there is no contractual or warranty relationship between Monsanto and the non-GM farmers. According to plaintiffs, the economic loss doctrine should not apply if the parties did not have the opportunity to allocate the risk of loss through contractual means. While it is true that the economic loss doctrine is rooted in freedom-of-contract theory, as the district court in StarLink noted:
[T]he economic loss doctrine has grown beyond its original freedom-of-contract based policy justifications. Farmers' expectations of what they will receive for their crops are just that, expectations. Absent a physical injury, plaintiffs cannot recover for drops in market prices.
212 F.Supp.2d at 842. Because the economic loss doctrine applies to all tort claims, see id.; Manning v. Int'l Harvester Co., 381 N.W.2d 376, 378 (Iowa Ct.App. 1985), plaintiffs' claims fail as a matter of law.
Finally, in a last-ditch effort to evade summary judgment, plaintiffs contend that summary judgment is inappropriate because some unnamed class members may have experienced "property damage" if their non-GM seed was comingled with GM seed in cooperative grain elevators. They also point out that Naylor "belongs to" a cooperative. This wholly speculative assertion of injury is flatly contradicted by counsel's statements to the Court that there is no claim of physical injury in this case. Moreover, plaintiffs have offered no evidence to demonstrate that the physical injury requirement would be met even if GM seeds were "comingled" with non-GM seeds in a cooperative grain elevator.[2] If plaintiffs thought such evidence *1094 existed, they should have filed a motion pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. They did not. Plaintiffs' conclusory statements are insufficient to preclude summary judgment. Summary judgment will be entered in favor of Monsanto on the claims of Sample and Naylor.

Antitrust Claims
Monsanto contends that it is entitled to summary judgment on the antitrust claims for damages brought by C-K Farms because it is an indirect purchaser. In Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), the Supreme Court held that only the "direct purchaser" from a monopoly supplier could sue for treble damages under § 4 of the Clayton Act. See § 15 U.S.C. 15. "Indirect purchasers" generally lack standing under the antitrust laws and so cannot bring suits for damages. See Campos v. Ticketmaster Corp., 140 F.3d 1166, 1169 (8th Cir.1998)
In opposition, plaintiffs contend that C-K Farms is a direct purchaser because: 1) it remits the technology fee to Monsanto; and 2) the farmer-dealers who sell the soybean seed and collect the technology fee act as agents of Monsanto for purposes of this analysis.
The Supreme Court has defined an indirect purchaser as one who is not the "immediate buyer from the alleged antitrust violator[]," Kansas v. UtiliCorp United, Inc., 497 U.S. 199, 207, 110 S.Ct. 2807, 111 L.Ed.2d 169 (1990), or one who "[does] not purchase [the monopolized product] directly from the [antitrust] defendant[.]" California v. ARC America Corp., 490 U.S. 93, 97, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989). Having carefully reviewed the record as a whole in light of the relevant legal standards, I find that genuine disputes of material fact remain and preclude entry of summary judgment at this time.

Class Certification Issues
Because I am granting summary judgment on the claims of Sample and Naylor, all motions relating to certification of the tort class will also be denied. I include in this group of motions the pending motions to withdraw present counsel and substitute new counsel, although I will still consider all arguments raised in these motions as they relate to the antitrust class-certification issue involving adequacy of counsel. I will rule on the motion for class certification of the antitrust class as submitted.
Accordingly,
IT IS HEREBY ORDERED that the motion for summary judgment [# 345-1] is granted in part and denied in part as stated above. Monsanto shall have summary judgment in its favor on the claims of plaintiffs Frederick Sample and George Naylor, and these claims are hereby dismissed with prejudice. The motion for summary judgment on the claims of plaintiff C-K Farms is denied.
IT IS FURTHER ORDERED that defendant Monsanto Company's motion in limine [# 327] is denied as moot.
IT IS FURTHER ORDERED that plaintiffs' motion to certify class action on tort claims [# 329-1] is denied.
*1095 IT IS FURTHER ORDERED that plaintiffs' motion to withdraw [# 379-1] and substitute [# 379-2] is denied as moot.
IT IS FURTHER ORDERED that plaintiffs' motion to strike Monsanto Company's motion in limine [# 341-1] is denied as moot.
IT IS FURTHER ORDERED that defendants' motion for evidentiary hearing on class certification [# 305-1] is denied as moot.
NOTES
[1] Missouri has adopted the choice-of-law rules of the Restatement (Second) of Conflict of Laws § 145 (1971), which provides that the rights and liabilities of the parties are governed by the substantive law of the state with the most significant relationship to the occurrence and the parties. Because Sample resides, farms and sells his crops in Illinois, Illinois law applies to his claims. Naylor's claims are governed by Iowa law. Plaintiffs do not dispute, nor could they, that Illinois and Iowa law apply to their claims. They merely argue that the Court should follow the reasoning of other jurisdictions "potentially interested in this litigation" and permit recovery of solely economic damages for public nuisance actions. I am not free to disregard the substantive law of Illinois and Iowa in favor of another state's law merely because plaintiffs find it more favorable. Only Sample and Naylor's claims are before me at this time, and I cannot deny summary judgment merely because another potential unnamed class member might live in a state where nuisance claims are actionable even in the absence of physical injury.
[2] For this reason, the present case is distinguishable from the StarLink case. In StarLink, the plaintiffs presented the following evidence:

Non-StarLink corn crops are damaged when they are pollinated by StarLink corn. The pollen causes these corn plants to develop the Cry9C protein and renders what would otherwise be a valuable food crop unfit for human consumption. Non-StarLink corn is also damaged when it is commingled with StarLink corn. Once mixed, there is no way to resegregate the corn into its edible and inedible parts. The entire batch is considered tainted and can only be used for the domestic and industrial purposes for which StarLink is approved. None of that supply can ever be used for human food.
212 F.Supp.2d at 841.