The Honorable Larry Jegley Prosecuting Attorney Sixth Judicial District 122 South Broadway Little Rock, Arkansas 72201
Dear Mr. Jegley:
I am writing in response to your request for my opinion on a question I will paraphrase as follows:
 Is it appropriate for a prosecuting attorney to release an autopsy report to a disability rights center requesting the report to further its investigation pursuant to the federal Protection and Advocacy for Individuals with Mental Illness Act?
Based upon the materials you have attached to your request, it appears that you have provisionally decided not to release to Disability Rights Center, Inc. ("DRC") an autopsy report relating to the death of a patient committed to the psychiatric unit of a local hospital. DRC is the protection and advocacy system formed to protect the rights of the mentally ill under the federal Protection and Advocacy for Mentally Ill Individuals Act of 1986 ("PAMII"), 42 U.S.C. § 10801 through-10851 (West 2005). In the materials you have provided, DRC reports the following:
 Over the course of the last thirty years, DRC, the protection and advocacy system for individuals with disabilities in Arkansas, has conducted numerous death investigations and has never before been denied access to an autopsy report. *Page 2 
RESPONSE
Although your question raises certain issues of fact that I am neither authorized nor equipped to address, to the extent that the deceased was an institutionalized mental patient at the time of her death and so long as DRC had probable cause to believe the death resulted from abuse, I believe the answer to your question is, in all likelihood, "yes": under such circumstances, it would appear to be not only "appropriate" but further mandatory as a matter of preemptive federal law for the prosecuting attorney to release the autopsy report. Not being a finder of fact, I am not authorized to opine whether probable cause existed in this particular case. In this regard, however, I will note that under PAMII, state and local officials generally lack the authority to second-guess a protection and advocacy ("PA") system's probable-cause determination.
You indicate in your request that you have based your provisional decision to withhold the autopsy report upon A.C.A. § 12-12-312(a)(1)(A) (Repl. 2003), which provides:
 (i) The records, files, and information kept, obtained, or retained by the State Crime Laboratory under the provisions of this subchapter shall be privileged and confidential.
 (ii) The records, files, and information shall be released only under and by the direction of a court of competent jurisdiction, the prosecuting attorney having criminal jurisdiction over the case, or the public defender appointed or assigned to the case.
Even assuming that this statute might be read as foreclosing production of the autopsy report under state law — an assumption I consider far from foregone given the statute's unspecified grant of discretion to you to release the report as "the prosecuting attorney having criminal jurisdiction over the case" — the question remains whether the federal law set forth in PAMII dictating disclosure might preempt what might be any contrary state law barring disclosure. In my opinion, this question must be answered in the affirmative.
As the Supreme Court noted in Crosby v. National Foreign TradeCouncil, 530 U.S. 363, 372-73 (2000): *Page 3 
 A fundamental principle of the Constitution is that Congress has the power to preempt state law. Art. VI, cl. 2; Gibbons v. Ogden, 9 Wheat. 1, 211 (1824); Savage v. Jones, 225 U.S. 501, 533
(1912); California v. ARC America Corp., 490 U.S. 93, 101 (1989). Even without an express provision for preemption, we have found that state law must yield to a congressional Act in at least two circumstances. When Congress intends federal law to "occupy the field," state law in that area is preempted. Id., at 100; cf. United States v. Locke, 529 U.S. 89, 115 (2000) (citing Charleston Western Carolina R. Co. v. Varnville Furniture Co., 237 U.S. 597, 604 (1915)). And even if Congress has not occupied the field, state law is naturally preempted to the extent of any conflict with a federal statute. Hines v. Davidowitz, 312 U.S. 52, 66-67 (1941); ARC America Corp., supra, at 100-101; Locke, supra, at 109. We will find preemption where it is impossible for a private party to comply with both state and federal law, see, e.g., Florida Lime Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143
(1963), and where "under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines, supra, at 67. What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects:
 "For when the question is whether a Federal act overrides a state law, the entire scheme of the statute must of course be considered and that which needs must be implied is of no less force than that which is expressed. If the purpose of the act cannot otherwise be accomplished — if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect — the state law must yield to the regulation of Congress within the sphere of its delegated power."
 Savage, supra, at 533, quoted in Hines, supra, at 67, n. 20.
(Footnote omitted.) *Page 4 
Congress enacted PAMII in 1986 to address what it perceived as frequent inadequacies in the manner in which states guard the rights of individuals who suffer from mental illness. See generally42 U.S.C. § 10801(a)(4). PAMII authorizes the Department of Health and Human Services to make allotments to PA systems in each state to protect and advocate the rights of the mentally ill and to "investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred."[1] 42 U.S.C. 10803.See also 42 U.S.C. § 10801
(b)(2)(B) (directing that any AP system "investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred"). Significantly, given the preemption issue, various courts have held that an AP's probable-cause determination cannot be reevaluated by a state or a service provider that disagrees with the AP system's determination on this issue. See, e.g., Protection Advocacy for Persons With Disabilities v. Armstrong, 266 F.Supp.2d 303
(D. Conn. 2003) (acknowledging a policy of PA independence from state oversight in making probable cause determinations); Advocacy Inc. v.Tarrant County Hosp. Dist., 2001 WL 1297688, at 4 (N.D. Tex. 2001) (same); Arizona Center for Disability Law v. Allen, 197 F.R.D. 689 (D. Ariz. 2000) (acknowledging that a state's PA system has the sole discretion to determine probable cause for the purpose of triggering its authority to access all records related to a mentally ill individual who may have been subject to abuse or neglect).
Moreover, as the court noted in Advocacy Inc., supra at 4, the concept of "probable cause" under PAMII appears to be broader than it is in other contexts:
 Probable cause means reasonable grounds for belief that an individual with mental illness has been, or may be at significant risk of being subject to[,] abuse or neglect. The individual making such determination may base the decision on reasonable inferences drawn *Page 5 
from his or her experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect.
See generally Deborah F. Buckman, Annotation, Validity, Construction,and Operation of Protection and Advocacy for Mentally Ill IndividualsAct, 42 U.S.C.A. §§ 10801 et seq., 191 A.L.R. Fed. 205 (originally published in 2004) (reviewing the federal case law confirming the independence of AP systems in making probable-cause determinations).
Specifically with respect to the issue of record production,42 U.S.C. 10805(a) provides:
 A system established in a State under section 10803 of this title to protect and advocate the rights of individuals with mental illness shall —
 * * * (4) in accordance with section 10806 of this title, have access to all records of —
 * * * (B) any individual (including an individual who has died or whose whereabouts are unknown) —
 (i) who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access;
 (ii) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and
 (iii) with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect[.] *Page 6 
Pursuant to applicable regulation, "[a]ccess to records shall be extended promptly to all authorized agents of a PA system."42 C.F.R. § 51.41.
The United State Code defines the term "records" as follows:
 As used in this section, the term "records" includes reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records.
42 U.S.C. § 10806(b)(3)(A). The question immediately arises whether a coroner's report falls within this definition of "records" for purposes of applying the PAMII standard of broad disclosure. In my opinion, the answer to this question is, in all likelihood, "yes."
In this regard, I find the unpublished case of Wisconsin Coalition forAdvocacy, Inc. v. Barry Busby, Case No. 02-C-871 (E.D. Wis. 2003), highly instructive. In Busby, a PA system sued a county coroner for his refusal to allow the AP system prompt access to records of his investigation into the death of a mentally ill inmate in a Wisconsin prison. In considering whether an autopsy report constituted a "record" under PAMII, the court offered the following analysis, which I will excerpt at some length because of its direct pertinence to your question:
 Congress expressly provided that such PA systems shall "have access to all records" of an individual who is the subject of an abuse or neglect investigation authorized by the Act. 42 U.S.C. § 10805(a)(4). It defined the term "records" to include "reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect and injury occurring at such facility." 42 U.S.C. § 10806(b)(3)(A). The term "facility" is defined by the Act to include "hospitals, nursing homes, community facilities for individuals with mental illness, board and care homes, homeless, shelters, and jails and prisons." 42 U.S.C. § 10802(3). *Page 7 
 The records defendant Busby compiled in the course of his investigation of the cause of Mindon Layton's death fall within this definition. Layton, a mentally ill inmate of the Wisconsin prison system, resided at the WRC at the time of his death. The WRC is a facility within the meaning of the PAMII Act. A coroner's office is an agency charged with investigating deaths (certainly a form of injury), including deaths of individuals with mental illnesses that are the result of abuse and neglect. The definition of the word "agency" includes "a person or thing through which power is exerted or an end is achieved," as well as "an administrative division (as of a government)." Merriam-Webster's Collegiate Dictionary 22 (10th ed. 1999). Moreover, while it is true, as Busby contends, that a coroner cannot independently order an inquest, a coroner is charged with the investigation of deaths. . . . [Citation omitted.] The duty to investigate reports of incidents of abuse, neglect and injury occurring at facilities covered by PAMII is implicit in the broader duty of a coroner to investigate suspicious deaths within his or her jurisdiction. I therefore conclude that the records compiled by Busby in the course of his investigation of the death of Mindon Layton are covered by PAMII.
Busby, supra at 12-13.
Although I have found no published cases in this or any other jurisdiction directly addressing whether an autopsy report constitutes a "record" under PAMII, I find the Wisconsin district court's analysis on this issue highly persuasive. Moreover, I believe a virtually identical analysis would apply to autopsy records in the possession of the State Crime Laboratory, as distinct from a coroner's office.[2] In my opinion, then, an Eighth Circuit district court faced with your question would, in all likelihood, track the analysis of the Wisconsin district court, classifying an autopsy report as a disclosable "record" under PAMII. *Page 8 
Finally, I feel obliged to address what appears to be your concern that the disclosure of an autopsy report to a PA system would significantly compromise the confidentiality provisions that would apply under state law. In the regard, I can only note that PAMII expressly defers to state confidentiality provisions to the extent it can without undermining a PA system's federal mandate to conduct an independent investigation. Specifically, 42 U.S.C. 10806 provides in pertinent part:
 (a) Confidentiality
 An eligible system which, pursuant to section 10805(a)(4) of this title, has access to records which, under Federal or State law, are required to be maintained an a confidential manner by a provider of mental health services, shall, except as provided in subsection (b) of this section, maintain the confidentiality of such records to the same extent as is required of the provider of such services.
In my opinion, this provision should assuage any concerns that the disclosure of an autopsy report to a PA system would be tantamount to a wholesale publication of what would otherwise be a confidential document.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General
[1] I should note that the disjunctive "or" in this statute does not accord with the applicable federal regulation, which uses the conjunctive "and" in setting forth this investigative obligation.42 C.F.R. § 51.41(b)(2)(iii) (providing that a PA system shall have access to records relating to a death investigation if "[a] complaint or report has been received and the PA system has determined that there is probable cause to believe that the individual has been or may be subject to abuse or neglect" (emphasis added)). The question of whether this distinction may be significant under the facts of this particular case is beyond the scope of my analysis. I am not situated to decide the factual question of whether in this case there was both a "complaint or report" and a PA system determination of probable cause, nor have I been asked to opine whether both are required in any particular case. I will merely note that in the event of a conflict, the language of a statute will trump that of enabling regulations.
[2] Although it does not appear to bear directly on your question, I will note that this office has repeatedly opined that, notwithstanding the provisions of A.C.A. § 12-12-312, autopsy reports that are not in the possession of the crime lab might well be subject to disclosure unless they qualify for an exemption from disclosure under the Freedom of Information Act, A.C.A. § 25-19-105 (Supp. 2007), as when the record would bear on an ongoing criminal investigation. See, e.g., Ops. Att'y Gen. Nos. 99-110; 97-294; and 87-353. *Page 1